Thank you, Your Honor. Good morning. Thank you, of course. This is a case, Your Honor, you're probably aware that there were changes to the regulations in 2017. The first case filed before that, so it is under what we politically call the old rules, and this is a case about the rejection of a treating physician. The physician in question, Dr. Baker, offered an opinion about two things, and the judge addressed those two things separately, and so it is our position that the reasons given for the first thing don't apply to the second. So the first thing the judge gave an opinion on, sorry, the doctor gave an opinion on, was that Mr. Coburn met the Listing 3.03b. Unfortunately, the attorney who drafted that questionnaire included the wrong criteria for the listing. The judge rejected that opinion on that basis, and we don't dispute that. The second part of the opinion was regarding missing time. Dr. Baker indicated that Mr. Coburn had a very volatile clinical course of sudden severe asthma attacks, resulting in an inability to hold down a steady job, and he alleged harms that date of April 23, 2015. The only reason that the judge gave to dispute that was that Mr. Coburn was able to work for several years following 2011, and reported seeing his work hours reduced only in January of 2015. Of course, that's prior to the alleged onset date, and it is inherent in the concept of disability insurance that someone works for a while, becomes unable to work, and then applies for benefits, so we just don't see why working prior to the alleged onset date has any bearing on the insurance. If I understood this correctly, I thought the inconsistency was that the ALJ was looking at the whole time frame of 2011, let's say to 2015, and suggesting that what the doctor was saying as of 2015 also applied to the earlier period when it didn't. I think that is where the confusion comes up. What the doctor said was that Mr. Coburn met these erroneous support listing criteria as of 2011. I would offer that a person who meets listing criteria could still continue to work. An example might be Stephen Hawking, who was diagnosed with ALS and continued to work for many, many years. The doctor separately defined that Mr. Coburn had these limitations, and was specifically asked whether those limitations would apply on the alleged onset date forward, which he said that they would. But I thought the inconsistency that is suggested was that the doctor was being viewed as having said that what was going on between 2015 also was the same thing that was going on earlier when it wasn't. I don't know whether I'm confused. I don't think that's necessarily a fair reading of his questionnaire. The only thing the doctor said about 2011 was that he met these supported listing criteria during that time, and given that those weren't even the actual listing criteria, whether he did or didn't do the material. Well, where in the letter from the doctor for this form, where does it say that the inability to hold a steady job only arose after April 2015? Because that I don't see, and that's the source of the confusion. Well, the doctor wasn't asked for an onset date for those limitations. He was only asked whether those limitations were applicable as of the onset date. So the doctor never... No, no. ...didn't apply before that date? No, because, you know, the form starts off, it doesn't have any kind of division. It starts off with the 3.03 criteria, and then says when have those been met since 2011, and then he gives an explanation, although he wasn't technically required to answer the question, he gives an explanation for why he had that view. He goes on list of medications, side effects, and then answers the question about jobs. He's not saying anything in this form that alerts that there's a change that's of a recent period of time. Am I reading this wrong? I think... I don't think you're reading this wrong, but I think you're reading more into it than it needs to. He was never asked whether the claimant was missing time in 2011, and the claimant is not alleging that he was missing time in 2011. The fact that he worked from the timing that the claimant was missing were resulting from these sudden asthma flares about every other month, and the record doesn't attribute that. So even under the reading that you're suggesting, the judge had an obligation to adjudicate the entire period, and from April 15th forward, the marriage shows a pretty regular pattern of flare-ups. The claimant started this new medication called Jucala in January 2016, but then he had a birth of a neighbor of Pregnizone in March 2016, in May 2016, in July 2016, there was a birth of Pregnizone in October 2015, which was prescribed for a different reason, but still it's the same medication, so that was just a couple months later. There was another burst of Pregnizone in January 2017, and then April 2017, so the record shows that every two or three months he was getting plenty of Pregnizone, just like Dr. Baker said. I can give you a citation from the record for those who have Pregnizone, if that will help. That's up to you, Bert. So I have a new medication starting in January 2016, that's exceptional Pregnant 284. March 2016, the birth of a neighbor of Pregnizone at 274. Adderall was noted as not controlled in May of 2016 at 271. Birth of Pregnizone in July of 2016 at 265. A birth of Pregnizone for a different problem, but still a birth of Pregnizone in October 2016 at 257. Birth of Pregnizone in July of 2017 at 238. Very next page, 239, again, Dr. Baker notes in his file that Pregnant Adderall is clearly controlled. You have just over two minutes left. Do you want to save the rest of your time? I would like to move there for a couple of people who have no further questions right now. Thank you. Mr. Nelson? Yes, may it please the Court, Counsel Lars Nelson on behalf of the Commissioner of Social Security. Your Honors, this Court should affirm the decision of the ALJ because it is supported by substantial evidence, and looking at the decision as a whole, the ALJ's path can reasonably be discerned. The ALJ cited improvement throughout the record, exclusively from almost Dr. Baker's clinic's notes. He cited the authorizations for Nucala that were signed by proxy via Dr. Baker for assessing the residual functional capacity and granting weight to the state agency opinions of Drs. Davenport and Brown. And then the ALJ transitioned to Dr. Baker's opinion. Whatever intent Counsel had with asking the last question on Dr. Baker's form, when Dr. Baker dragged his opinion to 2011 on 560, the ALJ was entitled to interpret that evidence. As this Court said in Tomazetti, the ALJ is the final arbiter in resolving ambiguities in the record, and I think the ALJ reasonably did so here. Notably, as to the question that is specifically at issue, those 16 hours per month, Dr. Baker said that recurrent attacks keep him out of work, and I think that looking at that specific language at 561 and then the 2011 date at 560, the ALJ could reasonably construe that Dr. Baker's opinion was really discussing this entire period. Can I ask you, I just want to be sure I understand this already, on page 561, which is the last page of the questionnaire, the doctor is asked, based on your treatment, your medical records, medical judgment, is it reasonable to conclude he has been limited by his impairments, as you describe above, since 4-23-16? And he says yes. That's 15, actually. It's hard to read. I'm sorry, it's hard to read. Yeah, 2015. Why, what's wrong with that? Why, I'm trying to figure out what's wrong with that. Well, I would say two things, Your Honor. I mean the record, if you just look at the records, he had these attacks, he was getting better, he had prednisone, I can tell you from my own experience every once in a while that it's a miracle drug and it works quite properly and it's quite good, and he says on page 560, Clinton has a pattern of severe exacerbations but returns to fairly normal function after a large dose of prednisone. Why is that? And then he says, what's right, what has that undermined? His conclusions about what happens after 4-23-16. Well, I would say two things, Your Honor. Remember, that indicates that it was getting worse. I mean, the ALJ found that the claimant was getting better when rejecting the claimant's subjective complaints. The clear and convincing reasoning standard applies to that analysis, and there's no dispute that the claimant's subjective complaints were unbelievable on that basis. So, I would say, first of all, that I would dispute that the claimant was getting worse simply because he had exacerbations that required the use of prednisone does not necessarily support the inference that he would miss 16 hours of work per month. But I think the ALJ was entitled to also look at this opinion as a whole, Your Honor, and if, for example, I say I bought this time on Monday. Does the ALJ make the argument or conclusion that you just made, the alternative one you just made, is that in the ALJ's decision? On 24 of the ALJ's decision, when discussing Dr. Baker's opinion, the ALJ specifically says that it is inconsistent with the evidence of record. So, the ALJ does not cite that the claimant has improved overall, but I think that... But isn't it... Isn't the... Show me what you're referring to, because I'm trying to see whether or not there's any that's not tethered to 2011, the 2011 issue. And you were suggesting that they could be disentangled, and I'm not sure I see that in the ALJ's order. Well, I mean, Your Honor, I don't think that they need to be disentangled because of Dr. Baker's opinion as a whole. No, I didn't see that argument. But I thought you were suggesting that apart from this 2011 issue, there also is no, you know, support in the medical record for saying that in 2016 he would miss this level of work. That seems to be a separate argument that gets away from this 2011 issue. And I was wondering, is it in the ALJ order, or do we have to confront this 2011 issue? No, I don't think you do, Your Honor. If you look at the fourth paragraph down on 24, midway through, the ALJ says, as a result, Dr. Baker's assessments are internally inconsistent, which I read as referring to the listings, equaling, and meeting, are inconsistent with the evidence of record. Now, the ALJ referred to the evidence of record throughout the decision. I think that this Court, under the standard of, you know, Molina discussing Alaska Department of Conservation versus EPA, if the ALJ's path in the decision as a whole can reasonably be discerned, this Court could draw those inferences. The sentence you just quoted comes after a sentence that's tied to the 2011 issue. He says, he makes clear that he construes Baker as saying that he's had this work-related problem since 2011, work, you know, the 16-hour thing since 2011. That's contrary to the record, because he obviously was working after 2011, and therefore it's internally inconsistent. So I can follow the path, but I'm not sure it makes sense. I certainly, you know, the Court's interpretation is certainly one reasonable one. I think if we look going back all the way to Magalini's v. Bowen, when we describe what is a specific and legitimate reason, this Court says it consists of summarizing the facts and clinical evidence, stating and interpreting findings. And the ALJ did this all up through and through Dr. Baker's opinion, because the ALJ then goes on to discount the non-medical source statements for the same reasons of the improvement, with the biking and the activities, the ATV riding, and Dr. Baker's own authorizations that are signed by a proxy saying the claimant is improving here. I think that the ALJ's intent here is to discount Dr. Baker's opinion. Dr. Baker hinged that opinion on part on saying that these impairments came about in 2011. The ALJ certainly could point to specific evidence that dramatically refutes that contention. But I think looking at the decision as a whole, this Court can reasonably follow the ALJ's path, that the ALJ cited improvement with treatment here, specifically from Dr. Baker's clinical notes. And that this Court can infer that the ALJ did not in no way intended for Dr. Baker's notes to support in any way, shape, or form Dr. Baker's ultimate conclusion. And I think merely drawing the inference that because he was on Pregnizone, he would miss 16 hours of work a month. I think that inference is not supported by the record, especially when we have those 2014 acknowledgment that he only missed work twice in an entire one-year period. I'm having trouble following this. On the paragraph that Judge Collins was just alluding to, the ALJ says, as a result, and he's referring to after 2011 as the whole relevant period is 2011 to 2016. As a result, Dr. Baker's assessments are internally inconsistent. And inconsistent with the evidence of record and the claimant's own reports of capability. And I'm trying to understand what he's talking about. What internal inconsistency is there? Dr. Baker never testified that he was disabled before 2016. What is the inconsistency? As I read it, this was conflating two separate periods of time. One when he wasn't disabled prior to April 23, 2016. And one before. And the one before starts in 2011, and he wasn't disabled during that period. And what's the inconsistency that is being referred to in that fourth paragraph? I believe that that is a reference to earlier in the ALJ's discussion when he's talking about the listing impairments, which are undisputed. Because you can either meet or equal a listing. And that's referring to 560. So Dr. Baker says he meets a listing and has since 2011. And then the question is in the alternative listing. The listing that you're talking about, is that the employee will claim severe asthma? Yes. I read the internal inconsistency. Oh, sorry, go ahead. So his assessment, what I'm trying to understand being consistent, what is the internal inconsistency that he's talking about now? To the extent that I can understand this, it's an inconsistency between before and after April 23, 2016. But I don't see any inconsistency. He doesn't say that he was disabled and couldn't perform these number of hours or days or months before 2016. He doesn't say that, so I don't know what is the inconsistency that the ALJ is referring to. In terms of the internal inconsistency, I believe that only references the analysis on 560. The analysis on page 560 asks two questions. Does the claimant meet the listing? And Dr. Baker says, yes, it does. The question then says, if you indicated that Mr. Copeland's condition does not meet the exact criteria of the listing, please provide an answer. And that's at the bottom of 560. And then, Dr. Baker also answers that. Yeah, but I don't understand. The listing that's being referred to is a mistake. Correct. It has nothing to do with anything here. This is the... It was a 30. He says... I think... I don't see... It seems to me what that refers to is the April 16th, 423. I'm just trying to understand the inconsistency. I think the ALJ discounted the 16 hours based upon the... That's the reference to the inconsistency with the evidence of record. And the ALJ cited two clear examples. And then when we look at the ALJs, we don't review an assessment of a doctor's opinion in a vacuum. Looking at the decision as a whole, the ALJ clearly showed what evidence supported the finding of non-disability here. And I think that even if there is ambiguity in the opinion and that the ALJ's reasonable interpretation is entitled to deference. I see that I'm way over my time, so unless the court has any other questions. Yeah, but he wasn't... Let me ask you one more question. He wasn't disabled. He's not even claiming that he was disabled before 423.16. So why... And it seems much more with that finding. What is it inconsistent with? Well, when Dr. Baker attributed all of the limitations that gave rise to his opinion to 2011 on 560, I think that permitted the inference that the ALJ drew that Dr. Baker says, this problem began in 2011 and has continued through April of 2015. I'm sorry. The problem was asthma. He has asthma attacks, and they got progressively worse. And then as of 423.16, he said that he was disabled, as I've told Mr. Fine. And I'm just trying to understand what's wrong with that finding. Well, certainly if I buy a tie on Monday, I've also owned, and this Friday, I've also owned it as of Thursday. I think Dr. Baker said he had these limitations since 2011. They've continued. They continue beyond that. And I think the ALJ already conclusively found that the claimant has improved into the relevant period. And because, I mean, that finding really isn't in dispute because it was a clear and convincing reason to discount the claimant's objective complaints. And I think that this Court can draw that reasonable inference that helped the ALJ's path and the ALJ's analysis here, that 2011 date created an ambiguity, and the ALJ reasonably resolved it. Thank you, Mr. Nilsen. Ms. Young? Ms. Young, you're muted. Thank you, Your Honors. As far as the issue of whether Mr. Covert improved, I think any records of improvement have to be read in their context. Dr. Baker's opinion was based on this pattern of he has a flare, he hits nine days of prednisone, he returns to baseline, and that will now find the answer to the record citations that I gave you, Your Honors, in my opening argument. As far as the purported internal consistency as to whether the claimant met the improper listing criteria or equaled them, I think frankly that's irrelevant because those criteria aren't the listing criteria in any way and the judge correctly disposed of that. At the end of the day, there's no evidence in the record that the claimant worked so much as a single day after April 23rd of 2015, which is when he alleged that he became disabled. And Dr. Baker says that as of that date, he couldn't hold down a steady job because of these asthma attacks that were causing him to miss a couple days of work on average. How would you like to balance that out? Did anybody testify that just because you're on prednisone for nine days it means you can't work for nine days? I mean, I have to confess here, I'm relying on my own experience. With one file in which I will tell you that I took prednisone for seven days, but by the second day I felt fine. So is there any, but I don't know whether there's any medical, I don't know, I don't experience, but is there any medical evidence in the record that suggests that just because you're on a medication which, by its very nature, you have to phase off for your own safety, that you're unable to work while you're phasing off? Other than Dr. Baker's opinion, which at best infers that, I don't think there's any direct evidence that the claimant couldn't work while he was on prednisone. I think the better idea is that he can work during a severe acid attack and he gets prednisone cured of those during that nine-day burst and taper, but obviously he's having symptoms before he starts the medication, before he starts the medication in response to symptoms. So he would get some quantity of time during each flare, and the doctors are asserting that that would average about a couple days a month. Thank you, Ms. Young. I think both counsels have made a lot of helpful arguments this morning in the cases submitted.
judges: MILLER, COLLINS, Korman